UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

COREY ADAMS (#357624)                                CIVIL ACTION

VERSUS

ANTHONY McCOY, ET AL.                             NO. 11-0129-BAJ

## RULING

This matter comes before the Court on the defendants' Motion for Summary Judgment, rec.doc.no. 74. This motion is opposed.

The pro se plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against E.M.T. Anthony McCoy, E.M.T. James Summers, Officer Earl Gordon, Medical Director Jonathan Roundtree, Ass't Warden Bruce Dodd and Ass't Warden Donald Barr, complaining that the defendants violated his constitutional rights in May, June and July, 2010, by exhibiting deliberate indifference to his serious medical needs. The plaintiff further alleged that defendant McCoy's actions were motivated by retaliatory animus. Pursuant to earlier Magistrate Judge's Report in this case, approved on December 23, 2011, see rec.doc.nos. 54 and 57, the plaintiff's claims asserted against defendants Earl Gordon, Jonathan Roundtree, Bruce Dodd and Donald Barr have been dismissed, as have all of the plaintiff's claims asserted against defendants Anthony McCoy and James Summers, except the plaintiff's claim that these two defendants, in their individual capacities, were deliberately indifferent to the plaintiff's serious medical needs.

The defendants now move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's administrative remedy

proceedings, certified copies of excerpts from the plaintiff's medical records, and the affidavits of Rhonda Z. Weldon and defendants Anthony McCoy and James Summers.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Supporting affidavits must set forth facts which would be admissible in evidence, and opposing responses must set forth specific facts showing that there is a genuine issue for trial. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. Anderson, supra. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, supra. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. Little, supra, 37 F.3d at 1076. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the

2

evidence, or resolve factual disputes. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

In his Complaint, as amended, the plaintiff alleges that on May 24, 2010, he sustained injury to his ears while attempting to clean them with twisted pieces of tissue. As a result of this injury, he submitted a sick call request and was seen at that time by defendant McCoy, a medical technician employed at the prison. Approximately 10 days later, on June 3, 2010, when the plaintiff had not seen a physician relative to this complaint, he submitted an administrative grievance ("ARP") to prison officials, complaining that he needed to see a physician and needed medication for the pain he was experiencing in his ears.

On June 11, 2010, the plaintiff again requested medical attention, this time for back pain and for constipation of five (5) days' duration.[1] Defendant McCoy again attended the plaintiff and provided the plaintiff with a liquid enema to relieve the plaintiff's constipation. According to the plaintiff, however, defendant McCoy failed to examine the plaintiff or take vital signs, and the defendant ignored the plaintiff's request for treatment or medication for the referenced back complaints.

The next day, June 12, 2010, the plaintiff again requested medical attention, reporting that his back still hurt and that his constipation had not been relieved. According to the plaintiff, defendant McCoy again failed to provide any treatment and instead walked away, stating, "Oh! You wanna play A.R.P. complaint and sickcall games, huh? Imma show you."

---

[1] The plaintiff asserts that he originally injured his back in April or May, 2009, and that his complaints arising in June, 2010, were the result of an aggravation of his pre-existing condition.

3

Two days later, on June 14, 2010, the plaintiff again sought sick call attention for his back and constipation complaints, and this time was attended by defendant James Summers, another medical technician employed at LSP. The plaintiff alleges that defendant Summers refused to accept the sick call request tendered by the plaintiff and instead told the plaintiff to allow time for the enema to work.

Four days later, on June 18, 2010, the plaintiff declared himself to be a medical emergency and was again attended by defendant Summers, but the defendant allegedly merely noted some information on a form and left the tier. Finally, on June 21, 2010, the plaintiff's constipation was allegedly relieved when he obtained medication from a co-inmate who was receiving treatment for the same complaint.

In addition, the plaintiff's back complaints were later relieved, at least in part, on July 22, 2010, when he obtained some over-the-counter pain medication from a security officer working on the tier. The plaintiff complains, however, of the delay in treatment of his constipation and back pain, and he complains that it was not until December, 2010, that a medical order was issued by a physician at LSP, allowing the plaintiff to have access to "constant Ibuprofen" for his back pain. He asserts that the above-referenced delays in treatment caused him to experience a fall and further injury to his back in January, 2011, which injury has never completely healed, and he asserts that he is in need of physical therapy for his back.

In response to the plaintiff's allegations, the defendants contend that they are entitled to qualified immunity in connection with the plaintiff's claim. Specifically, the defendants contend that the plaintiff has failed to produce sufficient evidence of conduct on their part which may be interpreted as rising to the level of a violation of the plaintiff's

4

constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. Id.[2]

Undertaking the qualified immunity analysis with respect to the plaintiff's claim of deliberate medical indifference, the Court concludes that the defendants' motion should be granted and that the plaintiff's allegations and evidentiary showing fail to overcome the assertion of qualified immunity.

Pursuant to well-settled legal principles, in order for an inmate-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care has been denied

---

[2]The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

5

and that the denial has constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation which he believes he should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. Farmer v. Brennan, supra.

As stated in Farmer, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. The deliberate indifference standard sets a very high bar: the plaintiff must establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Texas Dept. of Criminal Justice, 239 F.3d 752 (5th Cir. 2001). Further, a mere delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm. Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993).

Addressing first the plaintiff's claim asserted against defendant McCoy, the plaintiff complains regarding treatment provided by this defendant between May 24 and June 12, 2010. A review of the pertinent medical records reflects that on May 24, 2010, the plaintiff complained of pain and loss of hearing after attempting to clean his ears. It appears that

defendant McCoy took the plaintiff's vital signs on that date (blood pressure 134/78, pulse 70, and respirations 16), examined the plaintiff's ears, and referred the plaintiff for a consultation with a physician.[3] The medical notations made relative to this visit were reviewed by a physician and approved. Thereafter, on June 1, 2010, the plaintiff submitted a complaint regarding an abscessed tooth and was examined by another medical technician (not defendant McCoy). The plaintiff made no complaint at that time regarding his ears, and the plaintiff stated to the medical technician on that date that he was in possession of over-the-counter pain medication. The next day, June 2, 2010, the plaintiff again submitted a request for medical attention and was seen by defendant McCoy. The plaintiff's complaint on that occasion was only with regard to his teeth and gums, and the plaintiff made no complaint regarding pain or loss of hearing in his ears. Defendant McCoy again took the plaintiff's vital signs, physically examined the plaintiff, and referred the plaintiff for a consultation with a dentist. The notes written by the defendant relative to this visit were reviewed by a dentist and approved. Finally, on June 11, 2010, the plaintiff submitted a request for emergency medical attention and was again seen by defendant McCoy. The notes from this visit reflect that the plaintiff complained on that date of not having had a bowel movement for 5 days. These notes further reflect that the defendant took the plaintiff's vital signs (blood pressure 112/64, pulse 70, respirations 18), conducted a physical examination (abdomen soft and non-tender, no abdominal distension), provided the plaintiff with a "Fleets" enema, and advised the plaintiff to seek further medical attention as needed. There is no indication from this record that the plaintiff made a complaint

---

[3] The plaintiff was thereafter seen by a physician on July 9, 2010 relative to his ear complaints and was referred to consulting specialist.

regarding back pain at that time and, instead, the record reflects that the plaintiff voiced no other complaints. These notes were reviewed by a physician and approved. The next day, the plaintiff again sought emergency medical attention for constipation, made a complaint regarding back pain, and was again seen by defendant McCoy. Once again, the defendant took the plaintiff's vital signs (blood pressure 120/74, pulse 70, respirations 18, temperature 97.8), conducted a physical examination (abdomen soft and non-tender, no abdominal distension, able to bend to knees without difficulty, no swelling to back), advised the plaintiff to seek further medical attention as needed, and noted that the plaintiff had a scheduled appointment with a physician in 1½ weeks. As with the previous notations, the notes from this visit were reviewed by a physician and approved.

With regard to defendant Summers, the plaintiff asserts that on two dates, June 14 and June 18, 2010, the plaintiff submitted sick call request forms regarding his complaints of constipation and back pain and that, on the former date, the defendant refused to accept the form, merely advising the plaintiff to allow time for the prescribed enema to work, and on the latter date, the defendant refused to provide any treatment or attention. In response to these assertions, defendant Summers attests that he did not attend the plaintiff on either of the stated dates, and the defendant points to a contemporaneously-kept medical log reflecting that the plaintiff was not on the list of inmates seen on those dates. The plaintiff, in response, has not come forward with copies of either of the sick call request forms that he purportedly submitted to the defendant. To the contrary, the only pertinent evidence provided by the plaintiff, other than his own self-serving declarations, are (1) the sworn statement of a co-inmate who allegedly heard defendant Summers make a statement on June 14, 2010 (to an unidentified inmate), to "give [the enema] time to work", and (2) a sick

8

call request form dated June 18, 2010, which, although it bears the name, number and apparent hand-writing of an inmate other than the plaintiff, the plaintiff contends really reflects medical attention provided to him.

The plaintiff's evidentiary showing and factual recitation fails to establish that either defendant McCoy or Summers exhibited deliberate indifference to the plaintiff's serious medical needs in May and June, 2010. Although the plaintiff contends that the defendants failed to examine him, take his vital signs, or attend to his requests for medical attention, the pertinent medical records reflect that the defendants took appropriate measures to address the plaintiff's complaints on the respective dates, including assessments of both the plaintiff's objective symptoms and subjective reports of discomfort. Between May 24 and June 12, 2010, defendant McCoy provided both a referral for the plaintiff to see a physician and treatment in the form of an enema as deemed appropriate for the plaintiff complaints and condition. In addition, defendant McCoy's assessments were independently reviewed by physicians, and no deficiencies were found in the defendant's assessments. Further, with regard to defendant Summers, the plaintiff has not established that this defendant saw or examined the plaintiff on either of the two dates in question and, in any event, the plaintiff had been previously evaluated for the noted complaints only days previously.

In summary, with regard to the plaintiff's complaints of ear pain, the plaintiff was referred to a physician who subsequently saw and treated him on July 9, 2010. With regard to the plaintiff's complaints of constipation, the plaintiff was provided with an enema on the first day of his complaint, he exhibited objective symptomatology which did not reflect any apparent urgency, and his problem subsequently resolved without any noted

9

Case 3:11-cv-00129-BAJ-MJU   Document 78   12/21/12   Page 9 of 11

adverse consequence. And with regard to the plaintiff's complaints regarding an aggravation of his pre-existing back condition, it appears that his objective symptomatology, i.e., his ability to reach to his knees without difficulty on June 12, 2010, coupled with his prior admission that he was in possession of pain medication and the fact that he was noted to have a scheduled appointment with a physician in the near future, support a finding that the plaintiff did not face a serious medical condition which the defendants ignored.

It has consistently been held in this context that an inmate who has in fact been examined and evaluated by medical personnel fails to make a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.3d 286 (5th Cir. 1997); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Callaway v. Smith County, 991 F.Supp. 801 (E.D. Tex. 1998). Accordingly, it appears that, at most, the plaintiff suffered a mere delay in the treatment of his complaints and, as noted above, a mere delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm, neither of which has been shown by the plaintiff. See Mendoza v. Lynaugh, supra.

Finally, at least with regard to the plaintiff's complaints regarding constipation and ear pain, it has generally been concluded that these complaints, without more, do not constitute serious medical needs which would support a finding of deliberate indifference. See, e.g., Moy v. Evans, 2007 WL 315088 (S.D. Ill, Jan. 31, 2007) (inmate's complaint of constipation and accompanying pain did not constitute a serious medical need); Webb v. McKnight, 2006 WL 3761382 (W.D. Va., Dec.20, 2006), affirmed, 225 Fed.Appx. 117 (5th Cir. 2007) (inmate's complaints which included indigestion, constipation, and emotional

distress did not constitute a serious medical need); Ross v. McGinnis, 2004 WL 1125177 (W.D. N.Y., March 29, 2004) (inmate's complaints of abdominal pain and constipation did not constitute a serious medical need); Martin v. Tyson, 845 F.2d 1451 (7th Cir.), cert. denied, 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988) (toothache and ear infection not sufficiently serious to constitute serious medical need); Gipson v. Dean, 2008 WL 2051731 (W.D. La. 2008) (same).

Accordingly, the Court finds that the defendants are entitled to summary judgment in connection with the plaintiff's claim asserted against them.[4]

**IT IS ORDERED** that defendants' Motion for Summary Judgment, rec.doc.no. 74, be granted, dismissing the plaintiff's claim asserted against defendants Anthony McCoy and James Summers, with prejudice, and that this action be dismissed.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, this 20th day of December, 2012.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

---

[4] Although the plaintiff complains of additional pain and alleged non-treatment of his back condition after the events of June, 2010, and of additional injury to his back in January, 2011 (and thereafter), these complaints may not fairly be attributed to the actions of defendants McCoy and Summers, who are only alleged in the Complaint to have failed to treat the plaintiff on the earlier dates mentioned.